**Thomas J. THOMAS, Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Defendant-Appellee.**

No. 82–1454.

United States Court of Appeals, Tenth Circuit.

Oct. 18, 1983.

Douglas G. Voegler, Albuquerque, N.M., for plaintiff-appellant.

Ronald F. Ross, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., and Ronald B. O'Dowd, U.S. Dept. of Energy, Albuquerque, N.M., with him on the brief), for defendant-appellee.

Before SETH, Chief Judge, SEYMOUR, Circuit Judge, and MATSCH *, District Judge.

SEYMOUR, Circuit Judge.

Thomas J. Thomas brought this action against the Department of Energy alleging an unlawful disclosure of information in violation of the Privacy Act, 5 U.S.C. § 552a (1976). The district court found that the information disclosed had not come from an agency "system of records" within the meaning of the Act, and granted the Department's motion for summary judgment.[1] On appeal, Thomas contends that the court misconstrued the Act's requirements. We disagree and affirm.

Prior to the incident giving rise to this lawsuit, Thomas was employed as a convoy commander with the Department of Energy Transportation and Safeguards Division at Oak Ridge, Tennessee. As a convoy commander, Thomas supervised groups of couriers on road trips involving the movement of nuclear explosives, weapon components, and special materials. He was responsible for coordinating the safe and secure transport of these materials. The sensitive nature of his position required that he be certified periodically as mentally and physically suitable for the performance of "critical

duties," pursuant to the Department's Personnel Assurance Program (PAP). Under the PAP, a courier or convoy commander whose suitability is questioned may be temporarily removed from work and required to undergo psychiatric evaluation.

Sometime in August 1980, three couriers from the Oak Ridge facility reported to superiors in Albuquerque, New Mexico, that they had observed conduct on the part of Thomas that raised questions concerning his mental fitness. The matter was discussed at the Division's Albuquerque Operations Office by supervisory personnel, including Herman E. Roser, Operations Office Manager, James P. Crane, Director of the Transportation Safeguards Division, and James M. Jones, the Oak Ridge Section Chief. Jones, who was Thomas' supervisor, was coincidentally in Albuquerque attending to unrelated matters.

As a result of these discussions, Roser determined that Thomas should undergo psychiatric evaluation as soon as possible, and directed Crane to have Thomas detailed to Albuquerque for that purpose. Crane instructed Jones that upon his return to Oak Ridge he should notify Thomas to report to Albuquerque for a 120 day detail.

On September 15, Thomas reported to Crane in Albuquerque as instructed. That same day, in Oak Ridge, Jones called a meeting of courier personnel and advised them that Thomas had been sent to Albuquerque for psychiatric evaluation and probably would not return. Thomas did not consent to this disclosure, and it forms the basis of his action for damages under the Privacy Act.

The pertinent section of the Act provides, with certain exceptions, that:

"No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the

---

* Honorable Richard P. Matsch, United States District Judge for the District of Colorado, sitting by designation.

1. The district court also dismissed Count II of Thomas' complaint, which alleged slander. Thomas does not appeal this ruling.

prior written consent of, the individual to whom the record pertains. . . ."

5 U.S.C. § 552a(b). The Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5).

To support his claim, Thomas produced a number of documents relevant to his removal to Albuquerque which he contends constitute an agency "system of records" within the meaning of the Act.[2] The district court, however, could find no evidence indicating that these records had served as the source of the information disclosed by Jones or that Jones had ever seen the materials. Rather, the court found it undisputed that:

> "The source of Jones' knowledge of the Plaintiff's situation and the psychiatric evaluation came from his (1) personal participation in discussions regarding the Plaintiff with Leonard Raab, Travis Thompson, Marilyn Elliott, James P. Crane and Herman Roser in Albuquerque; (2) hearing the oral reports of three Oak Ridge couriers regarding Plaintiff's behavior pursuant to the Personnel Assurance Program requirements; and (3) the oral directive of Roser, through Crane, to Jones to have Plaintiff report to Albuquerque for a psychiatric evaluation. The records claimed by Plaintiff to have been the basis for Jones' disclosure were prepared in Albuquerque *after* the oral communication described above took place and after Jones had returned to Tennessee. They could in no way have been the source of information used by

Jones in his meeting with courier personnel on September 15th."

Rec., vol. I, at 49–50 (emphasis in original). Because there had been "no retrieval of information disclosed from an agency system of records," the court concluded that summary judgment was warranted. *Id.* at 50.

▪ We are mindful that on a motion for summary judgment, pleadings and documentary evidence must be construed in favor of the party opposing the motion. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33, 36 (10th Cir.1975). If the facts support an inference whereby the non-movant might prevail, summary judgment is inappropriate. *Id.* However, "once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." *Otteson,* 622 F.2d at 519 (quoting *Coleman v. Darden,* 595 F.2d 533, 536 (10th Cir.), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979)).

▪ In this case, the Department's motion for summary judgment was supported by a declaration under penalty of perjury from James P. Crane, stating that all relevant records pertaining to Thomas were maintained in Albuquerque and that Jones had never had access to any such records. Crane's declaration also establishes that Jones was present during initial discussions of Thomas' behavior and that Crane orally directed Jones to have Thomas report to Albuquerque for psychiatric evaluation. Thomas offered no counter affidavit or other evidence refuting Crane's declaration.[3]

---

**2.** Thomas submitted the following documents to the district court: (1) Request for Personnel Action dated September 13, 1980, detailing Thomas to Albuquerque; (2) letter dated September 15, 1980 from Crane to Thomas directing Thomas to report to Albuquerque for psychiatric evaluation; (3) letter dated September 15, 1980 from Crane to Humberto Diaz, M.D., advising Dr. Diaz of Thomas' scheduled examination and its purpose; (4) Consent for DOE-Sponsored Psychiatric Examination dated September 15, 1980 signed by Thomas and wit-

nessed by Crane; and (5) undated letter from Dr. Diaz to Crane reporting the results of Thomas' examination.

**3.** On appeal, Thomas contends that the district court erred in considering Crane's declaration because it was not made under oath and thus, he claims, is not a valid affidavit for purposes of Rule 56 of the Federal Rules of Civil Procedure. Thomas raises this argument for the first time on appeal. By failing to object below, any formal defects in the declaration are deemed to

Under the circumstances, the district court was fully justified in concluding that the information Jones disclosed on September 15 was derived from independent knowledge and not from an agency system of records. *Cf. Doyle v. Behan,* 670 F.2d 535, 538–39 (5th Cir.1982). Thomas was obligated to come forward with evidence indicating the existence of a triable issue of fact as to the source of Jones' disclosure. The unsupported allegations contained in his pleadings and briefs were insufficient to meet this burden. "A genuine dispute may not be predicated on speculation as to what might later be proven." *Id.* at 539 n. 5.

■ Thomas urges that even if Jones did not acquire his information from records contained in a system of records, his disclosure nevertheless violated the Privacy Act because he knew or should have known that such records did or would exist. We find this argument untenable. Section 552a(b) of the Privacy Act by its terms contemplates a "system of records" as the direct or indirect source of the information disclosed. The disclosure of information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records.

This distinction between information retrieved from a system of records and information independently acquired has been uniformly recognized by courts interpreting the Act. *See, e.g., Olberding v. United States Department of Defense,* 709 F.2d 621, 622 (6th Cir.1983); *Doyle,* 670 F.2d at 539; *Jackson v. Veterans Administration,* 503 F.Supp. 653, 655–57 (N.D.Ill.1980); *Savarese v. United States Department of Health,* 479 F.Supp. 304, 307–08 (N.D.Ga. 1979), *aff'd,* 620 F.2d 298 (5th Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981). "There is no provision of the Privacy Act which prohibits providing information to a third party without prior consent of the subject which a federal

official has acquired from personal observation or knowledge obtained from sources other than a record within the meaning of the Privacy Act." *Jackson,* 503 F.Supp. at 656.

The statutory construction advanced by Thomas is, in our view, inconsistent with congressional intent and objectionable on a practical level as well. We agree with the *Olberding* court that:

"[T]he only disclosure actionable under section 552a(b) is one resulting from a retrieval of the information initially and directly from the record contained in the system of records....

"....

"... The interpretation contended for by plaintiff—that section 552a(b) is violated if agency personnel disclose information they possess by means other than retrieval from a system of records if they know or have reasonable grounds to believe that the information may also be found in a record contained in a system of records—would create an intolerable burden and would expand the Privacy Act beyond the limits of its purpose, which is to preclude a system of records from serving as the *source* of personal information about a person that is then disclosed without the person's prior consent."

709 F.2d at 622 (*quoting Olberding v. United States Department of Defense,* 564 F.Supp. 907, 913 (S.D.Iowa 1982)) (emphasis in original).

■ This view accords with the legislative history of the Privacy Act, which indicates that Congress was concerned predominantly with the increasing use of computers and sophisticated information systems and the potential abuse of such technology. *See Savarese,* 479 F.Supp. at 308. Congress passed the Act "to protect the privacy of individuals identified in information sys-

be waived. *See Associated Press v. Cook,* 513 F.2d 1300, 1303 (10th Cir.1975). We note, in any event, that 28 U.S.C. § 1746 (1976) specifically authorizes the use in federal proceedings of unsworn declarations given under penalty of

perjury in lieu of affidavits. As Crane's declaration comports with the provisions of this statute, we see no error in its consideration below.

tems maintained by Federal agencies" by preventing the "misuse" of that information. Privacy Act of 1974, Pub.L. No. 93–579, § 2, 88 Stat. 1896, *reprinted in* 1974 U.S.Code Cong. & Ad.News 2177–78 (congressional findings and statement of purpose); *see generally* S.Rep. No. 93–1183, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 6916.

In the case before us, we have found no indication that any such information was misused. The evidence is undisputed that the information disclosed by Jones was learned through his participation in discussions with supervisory personnel in Albuquerque at the time the matter initially arose. It is irrelevant for purposes of the Privacy Act that such information may have existed in the Department's system of records as well, or that Jones knew or should have known this fact. The Department was entitled to summary judgment.

AFFIRMED.