**Roland Ralph WILBORN,
Plaintiff–Appellant,**

v.

**DEPARTMENT OF HEALTH
AND HUMAN SERVICES,
Defendant–Appellee.**

No. 93–35048.

United States Court of Appeals,
Ninth Circuit.

Argued, Submission Deferred
Sept. 15, 1994.

Resubmitted Nov. 15, 1994.

Decided March 10, 1995.

William Carpenter, Jr., Eugene, OR, for plaintiff-appellant.

Judith D. Kobbervig, Asst. U.S. Atty., Portland, OR, for defendant-appellee.

Before: THOMPSON and TROTT, Circuit Judges, and TASHIMA, District Judge.*

* Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

TASHIMA, District Judge:

This is an action brought under the Privacy Act of 1974, 5 U.S.C. § 552a. The district court granted the motion of defendant Department of Health and Human Services ("HHS") for summary judgment, from which plaintiff Wilborn has appealed.[1] The appeal is timely and we have jurisdiction under 28 U.S.C. § 1291.

## I. THE UNCONTROVERTED FACTS

Appellant Wilborn was employed as a staff attorney/decision writer by HHS in Eugene, Oregon, from August, 1986, through August, 1987. His supervisor during this period was the Hearing Office Chief Administrative Law Judge Stephen P. Kramer (the "ALJ"). Wilborn's primary job duty was to write decisions in Social Security disability cases adjudicated by the ALJ and one other judge. In May, 1987, the ALJ, acting under the direction of superiors, informed Wilborn that the agency was dissatisfied with the number of decisions he was writing and told him he would be placed on a Performance Improvement Plan ("PIP"). Thereafter, the ALJ analyzed Wilborn's job performance and generated a PIP, using statistical data from the agency's records. The PIP, with attached monthly production reports, was issued on June 1, 1987. One copy was given to Wilborn and another was placed in Wilborn's personnel file.

Wilborn filed a grievance over the PIP. Management granted the grievance, in part, in July, 1987, rescinding the PIP and ordering that the PIP memorandum be expunged from Wilborn's file. All other records pertaining to the PIP were also required to be destroyed. The ALJ executed that decision; he personally removed the PIP records from Wilborn's personnel file and deposited them in Wilborn's wastebasket.

Soon thereafter Wilborn resigned from HHS and went into private practice, representing Social Security benefit claimants. One of the claims he handled, the *Ricks* case, was adjudicated by the ALJ. Wilborn ob-

jected to the way the ALJ was handling the *Ricks* case. He wrote a letter accusing the ALJ of transforming himself from an impartial decision-maker into an "advocate."

The ALJ responded to these charges in the text of his decision in the *Ricks* case, using the following language:

What Mr. Wilborn does not state is that as his supervisor, the undersigned was required to place him on a Performance Improvement Plan (PIP) because of his failure to meet even the minimal production requirements.

The ALJ included this language against the advice of Cindy S. Vail ("Vail"), an attorney with HHS, who advised him during the drafting of the decision that it was inappropriate to include comments about his past relationship with Wilborn.

Copies of the decision were sent to the Appeals Council, in Alexandria, Virginia, and to Wilborn's client. Nine days after the decision was issued, Wilborn complained to the ALJ, alleging that the ALJ had violated the Privacy Act. That same day, the ALJ issued an errata sheet, ordering that the following passage be substituted for the language quoted above:

What Mr. Wilborn does not state is that he left the agency as a "disgruntled employee." Despite his difficulties with the Office of Hearings and Appeals, his current animus to the undersigned (his former supervisor) is astounding.

However, the errata sheet did not disclose that the PIP has been rescinded in full and removed from the agency's system of records. Further notwithstanding the errata sheet, the Appeals Council and Wilborn's client had already received copies of the decision with the original language, referring to the PIP.

## II. DISCUSSION

■ A grant of summary judgment is reviewed de novo. *Jones v. Union Pac. R.R.*, 968 F.2d 937, 940 (9th Cir.1992). We

---

1. Appellant also challenges the order transferring this case from the United States District Court for the District of Columbia, where the action was commenced, to the District of Oregon. We

deal with this issue, as well as costs and fees on appeal, in a separate, unpublished Memorandum.

must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989). The parties do not dispute any of the material facts. However, Wilborn contends that the district court erred in applying the substantive law.[2] We agree.

The district court granted summary judgment to HHS on two bases: First, that Kramer's reference to the PIP was a permissible disclosure because it was not retrieved from a system of records, but was based on his independent knowledge of the events. Second, that because Wilborn's personnel file had been purged of all references to the PIP, the information disclosed by the ALJ could not have violated the Privacy Act because there was no record in existence.

### A. Retrieval

The Privacy Act safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records. It provides, in part:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains....

5 U.S.C. § 552a(b).[3]

■ Under a long line of cases interpreting the Privacy Act, courts have agreed that the Act covers more than the mere physical dissemination of records. However, courts have also agreed that the Privacy Act does not necessarily cover disclosure of information merely because it happens to be contained in the records. Such a broad application of the Act would impose an "intolerable burden, and would expand the Privacy Act beyond the limits of its purpose, which is to preclude a system of records from serving as the *source* of personal information about a person that is then disclosed without the person's prior consent." *Olberding v. United States Dep't of Defense*, 709 F.2d 621, 622 (8th Cir.1983) (emphasis in original). Thus, if a party discloses information obtained independently of any records, such a disclosure does not violate the Act, even if identical information is contained in the records. *Id.*

Based on this rationale, courts have developed a general rule that the Privacy Act prohibits only "nonconsensual disclosure of any information that has been *retrieved* from a protected record." *Bartel v. FAA*, 725 F.2d 1403, 1408 (D.C.Cir.1984) (emphasis added). *See also, Kline v. HHS*, 927 F.2d 522, 524 (10th Cir.1991); *Thomas v. United States Dep't of Energy*, 719 F.2d 342, 345 (10th Cir.1983); *Olberding*, 709 F.2d at 622; *Jackson v. Veterans Admin.*, 503 F.Supp. 653, 656 (N.D.Ill.1980).

■ While we affirm the general applicability of the "retrieval rule," we hold that in the peculiar facts of this case, a mechanical application of that rule would thwart, rather than advance, the purpose of the Privacy Act. We have noted in the past that the Privacy Act, if it is to be given any force and effect, must be interpreted in a way that does not "go against the spirit" of the Act. *MacPherson v. IRS*, 803 F.2d 479, 481 (9th Cir.1986).

**2.** Given that this case was transferred from the District of Columbia, *see* fn. 1, *supra*, Wilborn contends that the district court should have applied controlling case law from the District of Columbia Circuit. However, this court has recently held that following a transfer under 28 U.S.C. § 1404(a), "when reviewing federal claims, a transferee court in this circuit is bound only by our circuit's precedent." *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir.1994). Thus, neither we nor the district court are bound by the District of Columbia Circuit's decisions. We also need not examine the curious problem which would arise if the transferor circuit's law

controlled—that is, whether that controlling law also includes that circuit's rule that the law of the transferee circuit controls. *See In re Korean Air Lines Disaster*, 829 F.2d 1171 (D.C.Cir.1987), *aff'd on other grounds sub nom. Chan v. Korean Air Lines Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989).

**3.** The Act also contains provisions requiring an agency to make reasonable efforts to assure that disseminated information is "accurate, complete, timely, and relevant for agency purposes." 5 U.S.C. § 552a(e)(6).

Thus, we hold that even though the ALJ may not have physically retrieved the disclosed information from Wilborn's personnel file, he violated the Privacy Act by using the HHS's sophisticated information collecting methods to acquire personal information for inclusion in the PIP, and then disclosing the existence of the PIP and its contents in an unauthorized fashion. To hold otherwise would mean that any agency official who uses government information collecting methods to generate a report containing private information could claim that a subsequent disclosure was based on "independent knowledge," and not physical retrieval of the record itself. Such "independent knowledge," gained by the creation of records, cannot be used to sidestep the Privacy Act.

Thus, we agree with the District of Columbia Circuit, which held in *Bartel* that the Privacy Act applies to a situation "where an agency official uses the government's 'sophisticated . . . information collecting' methods to acquire personal information for inclusion in a record, and then discloses that information in an unauthorized fashion *without actually physically retrieving it* from the record system." 725 F.2d at 1410 (emphasis added).

The facts in *Bartel* were similar to those before us today. In that case, plaintiff Bartel brought suit under, the Privacy Act against his former employer, the FAA, and a supervisor named Vincent, for unauthorized disclosures. Shortly before he left the FAA, Bartel had been under investigation for improperly obtaining the files of certain airmen, and a Report of Investigation ("ROI") had been generated. After Bartel left the FAA, Vincent disclosed in letters to the airmen that an investigation of Bartel indicated that Bartel had improperly obtained their records.

The *Bartel* defendants—like the HHS here—claimed that the retrieval rule had not been satisfied because the facts did not conclusively show that Vincent had actually read the ROI before making the disputed disclosures. Rejecting this argument, *Bartel* noted that Vincent himself had ordered the investigation that resulted in the ROI. *Id.* at 1411. Under such a fact pattern, a "hypertechnical interpretation" of the retrieval rule

would make little sense, given the underlying purposes of the Privacy Act. *Id.* at 1409. An absolute policy of limiting the Act's coverage to information physically retrieved from a record would allow an official to circumvent the requirements of the Privacy Act simply by not bothering to check the disclosure against the record.

In the instant case, the ALJ was even more closely connected to the maintenance of the system of records than was Vincent in *Bartel.* The ALJ did not simply order the PIP, as Vincent had ordered the ROI; he both created and destroyed the PIP.

In granting summary judgment for HHS, the district court erred in relying on *Olberding* and *Thomas,* which do not apply to the facts of this case. In *Olberding,* the disclosed information came from a report that was not a record in a system of records. 709 F.2d at 622. In the instant case, the parties do not dispute that the PIP was part of a personnel file which was part of a system of records. *Thomas* was based on the fact that the disclosing officer "never had access to any such records." 719 F.2d at 344. Here, the ALJ not only had access to the PIP, he created it.

Our holding—based on the unusual and egregious facts of this case—is not inconsistent with the long line of retrieval rule cases cited by the government. *See, e.g., Kline,* 927 F.2d 522 (where recipient of disclosure already had knowledge of disclosed information); *Doyle v. Behan,* 670 F.2d 535 (5th Cir.1982) (where there was no evidence that the disclosed information was drawn from a record, as opposed to a completely independent source); *Krowitz v. Department of Agric.,* 641 F.Supp 1536 (W.D.Mich.1986) (where the disclosed information was based *strictly* on personal knowledge), *aff'd,* 826 F.2d 1063 (6th Cir.1987), *cert. denied,* 484 U.S. 1009, 108 S.Ct. 705, 98 L.Ed.2d 656 (1988); *Jackson,* 503 F.Supp. 653 (where there was no evidence that the disclosing party had ever seen the record); *Savarese v. HEW,* 479. F.Supp. 304 (N.D.Ga.1979) (where the disclosing party never had access to the system of records), *aff'd,* 620 F.2d 298 (5th Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); *King v.*

*Califano,* 471 F.Supp. 180 (D.D.C.1979) (where the disclosed information was already publicly known). In the instant case, unlike those cited above, the ALJ personally created the PIP, relying on reports and statistics that were a product of the agency's information gathering mechanism. Any "independent" knowledge the ALJ had of the PIP or its contents came from the act of creation itself. It hardly places an intolerable burden on an agency to hold it liable for the kind of disclosure made by the ALJ.

### B. Destruction of Records

■ The district court also noted that the ALJ could not have violated the Privacy Act's prohibition on the disclosure of records, because Wilborn's personnel file had been purged of all references to the PIP. The court reasoned that not only was there no retrieval, there was no longer a record capable of being retrieved.

This ruling of the district court also is inconsistent with the spirit of the Privacy Act. Under its reasoning, an agency official could sidestep the Privacy Act merely by removing a document from the system of records first, before disclosing its contents. Allowing the government to escape liability for a disclosure by the ALJ of information that had been removed from the system of records by him following Wilborn's grievance, would make a mockery of the Privacy Act.[4] The fact that the agency ordered expungement of all information relating to the PIP makes the ALJ's disclosure, if anything, more rather than less objectionable.

For these reasons we reverse the district court's grant of summary judgment in favor of the HHS.

### C. Plaintiff's Motion for Summary Judgment

■ For the same reasons that it granted HHS's motion for summary judgment, the district court denied Wilborn's motion for summary judgment. The government is liable under the Privacy Act only if the agency acted in a manner that was intentional or willful. 5 U.S.C. § 552a(g)(4); *Rose v. United States,* 905 F.2d 1257, 1259 (9th Cir.1990) (intentional or willful conduct is necessary for a violation of the Act).

Willful and intentional conduct is that "amounting to more than gross negligence." *Id.* at 1260 (quoting *Johnston v. Horne,* 875 F.2d 1415, 1422 (9th Cir.1989)). An agency acts in a willful or intentional manner "either by committing the act without grounds for believing it to be lawful, or flagrantly disregarding others' rights under the Act." *Covert v. Harrington,* 876 F.2d 751, 757 (9th Cir.1989) (quoting *Albright v. United States,* 732 F.2d 181, 189 (D.C.Cir.1984)).

■ The uncontroverted facts plainly establish that the ALJ disclosed the information regarding the PIP without any ground for believing it to be lawful and in flagrant disregard of the rights of Wilborn under the Privacy Act. The ALJ was the highest ranking agency official at the Eugene, Oregon, Office of Hearings and Appeals. He was personally familiar with the Privacy Act, and had even noted to his incoming staff that the Privacy Act prevented *them* from disclosing information in claimant files. Before publishing the *Ricks* decision, the ALJ was informed by attorney advisor Vail that the language at issue was inappropriate and should not be included in the decision. Nevertheless, the ALJ included it. His deeds were intentional.

■ HHS argues that the ALJ's act was not intentional or willful because it was made in response to accusations of bias by Wilborn and thus was made for a legitimate purpose. However, the ALJ could have refuted these accusations in any number of ways, without disclosing the existence of the PIP to third parties. In fact, the language he substituted in the errata sheet does just that. HHS also argues that the agency action in this case could not have been willful or intentional because the ALJ acted alone. To support this argument, the government relies on *Waters v. Thornburgh,* 888 F.2d 870 (D.C.Cir. 1989), in which the court vacated summary judgment for the government in part because

---

4. Whether the passage of time would ever permit the disclosure of expunged information without liability under the Privacy Act does not need to be decided now by this court. At the time of the disclosure in this case, the PIP was obviously still fresh in the memories of both parties.

the disclosure in question was made by more than one supervisor. *Id.* at 876–77. This argument is without merit. In *Waters,* the fact that the disclosure was not just the impulse of a single employee was but one factor considered by the court. The same court that decided *Waters* held in *Bartel* that the disclosure made by one employee, acting alone, was actionable. Finally, HHS offers the errata sheet as evidence that the ALJ's actions were not willful or intentional. However, the ALJ issued the errata sheet only after Wilborn confronted him with his violation.

In short, the agency acted in a manner that was intentional and willful and is subject to liability under the Privacy Act. Consequently, we reverse the district court's grant of summary judgment for the government, and order the entry of summary judgment in favor of Wilborn. While we would ordinarily remand to the district court for a determination of the amount of damages to be awarded, on appeal, Wilborn has limited the damages he seeks to the statutory minimum of $1,000. 5 U.S.C. § 552a(g)(4)(A). *See Fitzpatrick v. IRS,* 665 F.2d 327, 330 (11th Cir. 1982) (purpose of minimum damage provision is to give those with "no provable damages" the incentive to sue). Thus, we direct the entry of judgment in favor of Wilborn in the sum of $1,000.

**REVERSED AND REMANDED.**