USCA1 Opinion

 

 September 18, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS  FOR THE FIRST CIRCUIT _______________ No. 94-1898 H. RAYMOND KELLETT, JR., AND LAUREL G. KELLETT, Plaintiffs, Appellants, v. UNITED STATES BUREAU OF PRISONS, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Mart in F. Loughlin, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin and Stahl, Circuit Judge. _____________ ____________________ H. Raymond Kellett, Jr., and Laurel G. Kellett on brief pro se. ______________________ _________________ Paul M. Gagnon, United States Attorney, and Gretchen Leah Witt, ______________ ___________________ Assistant United States Attorney, on brief for appellee. ____________________ ___________________ Per curiam. H. Raymond Kellett, Jr.,1 alleges Per curiam. ___________ violations of the Privacy Act, 5 U.S.C. 552a, by the Bureau of Prisons ("BOP") and seeks damages pursuant to 5 U.S.C.  552a(g)(4)(A) & (B). The district court granted summary judgment in favor of BOP. We now affirm. I. I. __ FACTUAL BACKGROUND FACTUAL BACKGROUND __________________ Kellett, admitted to the New Hampshire bar in 1975, acted as a closing attorney for a federally insured bank. In 1991, he pled guilty to making false statements to the bank and to obstructing justice by attempting to influence the grand jury testimony of his secretary. The district court sentenced him to serve one year and one day at a federal prison in Allenwood, Pennsylvania, beginning on January 28, 1992.  After about three months at Allenwood -- in April 1992 -- prison officials recommended Kellett for a transfer to a community corrections center ("CCC"). On May 17, 1992, Kellett signed documents necessary to effect his transfer. However, in June, officials told Kellett that because the prosecutor in his case, Assistant U.S. Attorney Margaret Hinkle ("Hinkle"), had objected, in accordance with an  ____________________ 1. Kellett's wife, Laurel Kellett, is also a plaintiff, informal BOP policy,2 the transfer recommendation would be seeking damages for loss of consortium.  2. Officials told Kellett that BOP had an unwritten policy of seeking the prosecutor's approval or concurrence in CCC placements for inmates sentenced to one year or less and that his sentence was short enough to come within the policy. -3- 3 rescinded. The record indicates that Hinkle had objected to Kellett's transfer during a telephone conversation with Kellett's case manager, Robert Adams. Although the record is not entirely clear, it appears that Adams's notes from his conversation with Hinkle were placed in Kellett's file sometime in June.  Invoking administrative procedures, Kellett appealed the transfer denial. After Allenwood's warden, F. C. Sizer, Jr., upheld the denial, Kellett appealed to BOP's deputy regional director N. Lee Conner. Conner again denied the appeal, stating: [Despite an initial favorable halfway house recommendation,] upon further review and contact with other agencies, it was determined CCC placement would be inappropriate. This is based on the fact you were convicted of Obstructing Justice, which involved the intimidation ____________ and coercion against one of your _________________________________________ employees to lie for you before the Grand ________________________ Jury. As a result of this information, staff at [Allenwood] determined CCC placement would be inappropriate. (emphasis added). Kellett appealed Conner's decision to BOP's Washington, D.C., office, arguing that it was apparently based on inaccurate information regarding intimidation and coercion. National inmate appeals administrator John Megathlin denied the appeal. Megathlin determined that Sizer had properly denied CCC placement because of: (1) the nature of Kellett's criminal offenses, and (2) the short length of Kellett's sentence. -4- 4 Meanwhile, Kellett sought copies of Adams's notes and other documents relating to his transfer. In response to Kellett's inquiries, Adams and Conner both told him that he would have to submit a request to BOP's general counsel in Washington, D.C. Kellett never submitted such a request. Kellett served his sentence and, upon release from prison, filed this suit. Kellett alleges that BOP willfully violated the so-called "accuracy provision" of the Privacy Act, 5 U.S.C. 552a(g)(1)(C), because Kellett's transfer denial was based on inaccurate information contained in his file. Kellett claims the record contained two inaccuracies: (1) that his obstruction-of-justice conviction resulted from intimidation and coercion; and (2) that Kellett had caused a loss of $800,000 by making false statements. He also alleges that BOP violated the "access provision" of the Privacy Act, 5 U.S.C. 552a(d)(1), because BOP did not turn over to him copies of Adams's notes allegedly containing Hinkle's comments. After Kellett filed requests for admissions, the district court granted BOP's motion to stay discovery.  BOP filed a motion to dismiss, which the district court converted to a motion for summary judgment. Kellett v. _______ United States, 856 F. Supp. 65, 68 (D.N.H. 1994). BOP ______________ supported its motion with three affidavits -- from Patrick Casey (Sizer's predecessor at Allenwood), deputy regional -5- 5 director Conner, and inmate appeals administrator Megathlin. Kellett objected to the affidavits on several grounds. The district court granted summary judgment. As to the accuracy claim, the court held that the alleged inaccuracies in Kellett's file had not proximately caused the decision to deny CCC placement: Kellett's denial of CCC placement was justified on the basis of the seriousness of his underlying offense and the length of his sentence, regardless of the amount of loss involved or the nature of the obstruction of justice conviction. The evidence makes it pellucid that $800,000 loss figure and the erroneous circumstances regarding the obstruction of justice were not substantially relied on in rendering the decision to deny CCC placement. Even if these factors were considered to some degree their consideration would have been harmless since there was sufficient cause to deny Kellett CCC placement based on the seriousness of the underlying offense and brevity of the sentence received. Id. at 71. The court did not consider Kellett's objection to ___ the trio of affidavits. Additionally, the district court noted, but did not hold, that Kellett "would have difficulty" establishing that BOP had willfully and intentionally maintained inaccurate records. As to the access claim, the court held that applicable regulations exempted Kellett's records from the access provisions of the Privacy Act. Id. ___ at 68-69. This appeal followed. -6- 6 II. II. ___ DISCUSSION DISCUSSION __________ After reciting the standard of review, we will address separately Kellett's accuracy and access claims. A. Standard of Review ______________________ We review the district court's grant of summary judgment de novo, considering the facts in the light most __ ____ favorable to the nonmoving party. Udo v. Tomes, 54 F.3d 9, ___ _____ 12 (1st Cir. 1995). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. ____________ R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). __________________________ "Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." Dow v. United Bhd. of Carpenters & ___ ___________________________ Joiners, 1 F.3d 56, 58 (1st Cir. 1993). _______ -7- 7 B. The Accuracy Claim ______________________ To establish a violation of the accuracy provision of the Privacy Act, a plaintiff must show that: (1) the agency failed to maintain accurate records; (2) an adverse agency decision resulted from the failure to maintain accurate records; and (3) the agency's actions were willful and intentional. See, e.g., White v. Office of Personnel ___ ____ _____ ____________________ Management, 840 F.2d 85, 87 n.1 (D.C. Cir. 1988). For __________ purposes of the decision below and this appeal, BOP has assumed that Kellett's record contains both the inaccurate loss figure and the inaccurate characterization of Kellett's behavior leading to the obstruction-of-justice charge.  As noted above, the district court held that Kellett had failed to establish the requisite causation. On appeal, Kellett challenges the district court's holding because, among other reasons, the court relied on affidavits alleged to violate Fed. R. Civ. P. 56(e). We affirm on different grounds, see Acha v. United States, 910 F.2d 28, 30 ___ ____ _____________ (1st Cir. 1990) (a court of appeals may affirm on any ground presented by the record), and thus do not reach the merits of Kellett's arguments regarding causation. After careful review of the record, we conclude that, as to the -8- 8 obstruction-of-justice charge, Kellett has failed to establish that BOP's actions were willful and intentional.3 A plaintiff may establish a willful Privacy Act violation by showing that the agency acted without grounds for believing its action to be lawful, or in "flagrant disregard" for rights under the Act. See, e.g., Wilborn v. ___ ____ _______ Department of Health & Human Servs., 49 F.3d 597, 602 (9th _____________________________________ Cir. 1995). To survive summary judgment, the evidence must demonstrate conduct "greater than gross negligence" or conduct showing "reckless behavior and/or knowing violations" of the Privacy Act. Moskiewicz v. Department of Agric., 791 __________ ____________________ F.2d 561, 564 (7th Cir. 1986). It is not enough to show that an agency may have undertaken voluntary actions which inadvertently violated some provision of the Act. Albright ________ v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984). _____________ Kellett fails to support his claim with any evidence establishing that BOP's acts were willful or intentional. Principally, Kellett fails to identify any reasonable basis for BOP officials to question the accuracy of Hinkle's statements. To be sure, Kellett repeatedly expressed concern that Hinkle was vindictive, but we see nothing in the record upon which to suggest that the  ____________________ 3. As to the inaccurate loss figure, the record is devoid of any indication that BOP officials relied on it in making their adverse determination. Accordingly, Kellett has failed to carry his burden and summary judgment was appropriate.  -9- 9 officials ever thought there was a possibility that Hinkle may have misrepresented the circumstances surrounding the obstruction-of-justice charge. The only BOP decisionmaker who actually knew that Kellett disputed Hinkle's statement ____ was national inmate appeals administrator Megathlin. Megathlin, however, did not rely on the inaccurate information in making his adverse decision. Rather, as noted above, he denied Kellett's placement on the basis of the general nature of Kellett's offenses and on the length of Kellett's sentence. Simply stated, there is no basis upon which to conclude that BOP officials willfully or intentionally maintained inaccurate information regarding Kellett. Thus, summary judgment was appropriate. Cf. Hill __ ____ v. United States Air Force, 795 F.2d 1067 (D.C. Cir. 1986).  _______________________ C. The Access Claim ____________________ The Privacy Act requires an agency maintaining a "system of records" to give individuals, upon request, access to their records or to information about them contained in the system. 5 U.S.C. 552a(d)(1). If the agency refuses to comply with such a request, an individual may sue the agency for injunctive relief, seeking production of the records. 5 U.S.C. 552a(g)(1)(B) & (g)(3)(A). An agency may exempt a system of records, 5 U.S.C. 552a(j), if the system of records meets certain criteria, 5 U.S.C. 552a(j)(2)(A)-(C). Records are exempt if, inter alia, they are "reports _____ ____ -10- 10 identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision." 5 U.S.C.  552a(j)(2)(C). Such BOP reports have been exempted from both the access provisions of the Privacy Act and access suits brought thereunder. See 28 C.F.R. 16.97(a), (b)(3) & (9). ___ Because the records containing Hinkle's comments fall within the scope of 552a(j)(2)(C), the district court properly granted summary judgment. III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, the decision of the district court is affirmed. affirmed. ________ -11- 11