### Alan STOKES, Plaintiff,

v.

### COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, Defendant.

### No. CIV. 02–103–P–H.

United States District Court,
D. Maine.

Nov. 21, 2003.

allege retaliation, the Navy is entitled to summary judgment on that claim as well.

 

Cynthia A. Dill, South Portland, ME, for Plaintiff.

Evan Roth, Office of the U.S. Attorney, Portland, ME, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HORNBY, District Judge.

I presided at a bench trial in this case on November 12, 2003. At that time, I issued oral findings of fact and conclusions of law on a claim for intentional infliction of emotional distress. These are my findings of fact and conclusions of law on the remaining Privacy Act claim.

#### FINDINGS OF FACT

1. Regina Brooks was a claims representative at the Portland Social Security Administration office. She also served as a liaison to Maine Medical Center (MMC) and regularly visited the hospital to assist patients in obtaining benefits.

2. Brooks received training on the Privacy Act when she became a claims representative in 1986. She understood that, before disclosing a client's medical information to a third party, she needed written consent from the client.

3. Alan Stokes was diagnosed with the human immunodeficiency virus (HIV) in August of 2000. He was diagnosed with cancer in September of 2000. After being diagnosed with cancer, Stokes was hospitalized at MMC.

4. Stokes' partner, Dianne Hamilton, knew about his HIV status. Stokes did not tell other friends or family that he had HIV.

5. On September 20, 2000, Stokes authorized Ellen Jackson, a social worker at MMC, to contact the Social Security office because he was interested in obtaining benefits. Jackson then contacted Brooks, told her of Stokes' interest, and said that Stokes had cancer and HIV.

6. The next day, Brooks went to Stokes' hospital room to gather information and help Stokes fill out the paperwork necessary to procure Social Security benefits.

7. When Brooks arrived in Stokes' hospital room, Stokes was in bed and Hamilton was in the room.

8. Brooks told Stokes that she was from the Social Security office, there to help him apply for benefits, and asked him whether he wanted to talk at that time or wanted her to come back later. Stokes said he wanted her to stay and talk at that time.

9. Brooks sat down next to Stokes' hospital bed and began asking him questions for the purpose of filling out the application. Upon inquiry, Stokes told Brooks that he had cancer and HIV, and Brooks recorded this information on the Social Security benefits application form.

10. Stokes appeared tired and closed his eyes several times during the interview.

11. After Brooks and Stokes had discussed his medical condition, income, and resources, an acquaintance of Stokes, Andrea Robinson, came into the room.

12. Brooks asked Stokes if he wanted to continue with the interview, and Stokes said that he did.

13. When Brooks had completed the application for benefits, Stokes signed it. The completed application was eventually placed in Stokes' claim file at the Portland Social Security office.

14. On her way out of the hospital room, Brooks told Stokes, within Robinson's hearing, that he would need to contact the office when his HIV status developed into AIDS. At that time, Stokes said nothing to Robinson about keeping his HIV status confidential.

15. Before Brooks made her statement, Robinson did not know that Stokes had HIV. She left Stokes' hospital room shortly after Brooks left and has not spoken to him since.

16. Robinson later told a friend, Roberta Cannell, about Stokes' HIV status. She also discussed Stokes' HIV status with someone in a chat room on the Internet.

17. Stokes learned that Robinson had discussed his HIV status with others. As a result, he was angry, hurt and distraught and received supportive counseling at the AIDS Lodging House.

## CONCLUSIONS OF LAW

■ A. The Privacy Act, 5 U.S.C. § 552a, provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains ...." *Id.* § 552a(b). "Record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency." *Id.* § 552a(a)(4). "System of records" is defined as "a group of any records under the control of any agency

from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(5). The benefit application that Brooks prepared in Stokes' hospital room was a "record" destined to become part of the Social Security Administration's "system of records."

■ B. A disclosure does not violate the Privacy Act unless the information disclosed was obtained from a protected record; "disclosing information that happens to be contained in a protected record is not covered by the Privacy Act if the information is obtained independently." *Orekoya v. Mooney,* 330 F.3d 1. n. 3 (1st Cir.2003). At least two Circuits have held that when an agency employee uses the agency's information gathering techniques to acquire personal information, however, he or she does not obtain that information "independently." *Bartel v. Fed. Aviation Admin.,* 725 F.2d 1403, 1408–09 (D.C.Cir.1984); *Wilborn v. Dept. of Health and Human Servs.,* 49 F.3d 597, 600–02 (9th Cir.1995). Thus, agency employees who, like Brooks, create or initiate records are not shielded from the Privacy Act merely because they do not have to consult or retrieve those records before disclosing the information that they contain. Nonetheless, in order for Brooks to have violated the Privacy Act, she must have "disclosed" information contained in the benefit application.

■ C. The Privacy Act does not prevent an agency employee from discussing the contents of a protected record with the person to whom the record pertains. Brooks and Stokes were engaged in a discussion about matters relevant to his obtaining benefits, including his medical condition. When, at the end of the interview, Brooks made the statement about Stokes' HIV status, she directed the statement to Stokes, not to the two other people in the room.

D. Brooks' statement, directed at Stokes, did not become the kind of "disclosure" for which the Privacy Act requires written consent merely because Robinson overheard it. Moreover, Stokes gave Brooks consent to continue the interview in Robinson's presence.[1] Social Security Administration regulations implementing the Privacy Act address this situation in an analogous context. 20 C.F.R. § 401.40 provides: "You may be accompanied by another individual of your choice when you request access to a record in person, *provided* that you affirmatively authorize the presence of such other individual during any discussion of a record to which you are requesting access." Although Stokes was not formally requesting access to his records, he and Brooks were engaged in a conversation concerning the contents of his benefits application. He affirmatively authorized Robinson's presence during this discussion.

E. Brooks' statement to Stokes in Robinson's presence may have represented a lack of judgment on her part. It did not, however, represent a Privacy Act violation.

---

1. At trial, Brooks testified that she stopped the interview when Robinson entered the room and obtained Stokes' permission to continue in Robinson's presence. Robinson offered a different sequence of events, claiming that she was already in the room when Brooks arrived. She did testify, however, that Brooks obtained Stokes' permission to interview him in her presence. Dianne Hamilton's deposition was admitted because she was not available to attend trial. Hamilton's deposition testimony did not specify whether Brooks asked permission to continue with the interview, but was implicit that there was no such express request. Hamilton Dep. at 9, 15. She did testify explicitly, however, that Stokes did nothing to halt the interview when Robinson arrived. Stokes did not testify. I find that Brooks asked for and received consent.

## CONCLUSION

Judgment shall be entered for the defendant.

**SO ORDERED.**