**Dale BUCKLES and Shelly Harris, Plaintiffs,**

v.

**INDIAN HEALTH SERVICE/BELCOURT SERVICE UNIT, Defendant.**

**No. A4–02–133.**

United States District Court, D. North Dakota, Northwestern Division.

March 30, 2004.

David E. Reich, Pearce & Durick, Bismarck, ND, for Plaintiffs.

David L. Peterson, U.S. Attorney'S Office, Bismarck, ND, for Defendant.

## MEMORANDUM AND ORDER

HOVLAND, Chief Judge.

The Court presided over a bench trial in the above-entitled action on March 15, 2004. For the reasons set forth below, the Court dismisses the Plaintiffs claims with prejudice.

## I. BACKGROUND

The Plaintiffs, Dale Buckles and Shelly Harris, filed this action against the Indian Health Service ("IHS") and certain named individual defendants seeking damages for the alleged unauthorized disclosure of the Plaintiffs' medical records by IHS employees to members of the Turtle Mountain Tribal Council.[1] On February 5, 2004, the Court dismissed the Freedom of Information Act claim, and allowed the Plaintiffs to proceed with their Privacy Act claims only as to two specific instances: (1) the alleged disclosure by Ray Grandbois of the Georgia Artz memorandum to Tribal Chairman Richard Monette, and (2) the alleged disclosure by Georgia Artz and Marilyn Delorme of a list of Tylox prescriptions to members of the Turtle Mountain Tribal Council at the Skydancer Hotel. The Court also allowed the Plaintiffs to proceed with their retaliation and defamation claims. Thus, the only claims remaining at the time of the bench trial were the alleged violations of the Privacy Act, retaliation, and defamation. The gist of

---

1. Initially the Plaintiffs named Georgia Artz, Lisa Patnaude Belgarde, Nellie Zerr, and Emily Davis as Defendants. On June 24, 2003, The Court granted IHS's motion to substitute it for the named defendants and dismissed the individual defendants. On February 4, 2004, the Court also dismissed the claim of Plaintiff Cheryl LaVallie when she voluntarily requested her claims be dismissed without prejudice.

the lawsuit is the Plaintiffs' contention that employees of IHS shared confidential medical information with certain members of the Turtle Mountain Tribal Council.

## II. SUMMARY OF THE EVIDENCE

The plaintiffs, Shelly Harris and Dale Buckles, allege that Ray Grandbois shared a memorandum written by Georgia Artz on March 1, 2001, (Exhibit P–1) with Richard Monette, who was the Chairman of the Turtle Mountain Tribal Council at the time. Harris and Buckles contend the memorandum improperly disclosed confidential medical information. They also allege that Marilyn Delorme and Georgia Artz met with members of the Tribal Council on April 5, 2001, and improperly disclosed a list of Tylox prescriptions (Exhibit P–13) to members of the Tribal Council. The following day, April 6, 2001, the Turtle Mountain Tribal Council issued a resolution (Exhibit P–4) asking for the removal of Harris and Buckles from their positions at IHS pending an investigation. Harris and Buckles then filed a Privacy Act complaint (Exhibit P–12)against various employees of IHS, which eventually culminated in this lawsuit.

Harris and Buckles both testified at trial. Shelly Harris is a registered nurse who has worked at IHS for fifteen years. She has a bachelors of science degree in nursing and a masters degree in business administration with a focus on healthcare. Harris is currently the Nurse Educator at IHS. Harris admitted she had no personal knowledge of precisely what medical information was shared and with whom. Harris also admitted she has no documentary evidence that the Georgia Artz memorandum (Exhibit P–1) was given to members of the Tribal Council. In addition, Harris admitted neither her name nor her patient chart number were included on the list of Tylox prescriptions allegedly given to the Tribal Council.

Harris testified that since the alleged release of information, her co-workers have treated her differently. She is no longer included in the same meetings and employees do not interact with her the same way as before she filed the complaint. One co-worker called Harris a drug trafficker. Harris feels she no longer has the respect of her co-workers. Harris testified she used five hours of sick leave in 1999, 20 hours in 2000, over 150 hours in 2001, and more than 200 hours of sick leave in 2002. However, Harris was unable to state how may hours were attributable solely to stress caused by the alleged Privacy Act violations. Harris also admitted she holds the same job she did before the alleged disclosures and she has received regular pay raises since April of 2001. Harris acknowledged at trial that conditions at IHS have improved slowly after the appointment of a new Service Unit Director or CEO, Linus Everling.

Harris testified she had experienced additional stress at home. Harris and Buckles live together and the stress has affected their relationship. Harris feels everyone in the community was talking about her. Harris has sought counseling, but she went to a health care facility in Rolla, North Dakota, because she was scared that her medical information would be released if she sought treatment in Belcourt. Harris now seeks all her medical care outside of Belcourt.

Dale Buckles testified that he is a licensed medical technologist and is currently the Health Systems Specialist at IHS. Buckles has worked at IHS for sixteen years and has a two-year vocational degree from East Grand Forks Technical College. In his position as Health Systems Specialist, Buckles oversees compliance issues, risk management, patient complaints, tort

claims, malpractice suits, and patient billings. Since the April 6, 2001, resolution (Exhibit P–4), the Tribal Council has passed two additional resolutions asking that IHS remove Buckles from his position. Buckles testified he believes all three resolutions are because of the release of his confidential medical information and his Privacy Act complaint.

Buckles admitted he has no personal knowledge of who received the Georgia Artz memorandum or who published it. Buckles testified that his patient chart number is on the list of Tylox prescriptions. However, he acknowledged that a person reviewing the list of Tylox prescriptions (Exhibit P–13) would have to know what his patient chart number was or have access to a cross-reference of patients names and chart numbers to identify who was receiving the prescriptions. Buckles also admitted he had no personal knowledge of whether the list of Tylox prescriptions was shown to Richard Monette.

Buckles testified that he has experienced stress at home and at work. He feels his career opportunities have now been limited and he has been running into a "brick wall" at work as far as promotions go. Buckles also started to seek health care treatment in Rolla and Dunseith, North Dakota, because he is afraid his medical information will be disclosed if he seeks treatment in Belcourt. Buckles admitted he has not been removed from his position, but that he was "detailed" to an IHS facility in Ft. Berthold, North Dakota, for one week in October 2002. Buckles acknowledged he had not been removed from any committees at IHS and that he had received all the pay raises he was due since April of 2001.

Georgia Artz, Marilyn Delorme, Dave Larson, David Azure, Ray Grandbois, and Richard Monette were called to testify at trial by the Defendant.

Georgia Artz has been a registered nurse for twenty years and has worked at IHS for more than eighteen years. Artz is currently the Director of Public Health Nursing. She is a member of the Governing Board of IHS, Risk Management Committee, and Performance Improvement. Artz explained that she wrote the memorandum (Exhibit P–1) in response to a memo (Exhibit P–11) from her supervisor, Ray Grandbois. Grandbois wrote Artz a memorandum requesting clarification of the items addressed under the Public Health Nursing section of a report (Exhibit P–10) prepared by the area personnel manager, David Azure.

Artz testified that three women who worked in the billing department ("the billers") at IHS came to her with concerns that certain IHS administrators were receiving prescriptions without visiting a doctor. Artz reported this information to David Azure when he was conducting a review at the facility in 2000. After receiving the memorandum from Grandbois, Artz admitted asking the three employees from the business office for the names of the IHS administrators who they believed were receiving prescriptions without a doctor's visit. Artz said she gave specific names of who was involved in receiving prescriptions without a doctor's visit because she had been told in the past some members of the IHS administration had blocked efforts to correct this type of behavior. Artz testified she gave the memo to only five people—Ray Grandbois, Bruce Badmoccasin, Daryl Russell, Tony Peterson, and Dave Azure.

Artz admitted she and Marilyn Delorme met with members of the Tribal Council at the Skydancer Hotel on April 5, 2001. The meeting lasted between forty-five minutes and one hour. Prior to the meeting she and Marilyn Delorme compiled a list of concerns and put them into memo format

(Exhibit D–78). Artz brought a copy of the memorandum she and Delorme had prepared to the meeting, but did not pass it out. Artz also brought the list of Tylox prescriptions to the meeting at the Skydancer. Artz said she held the Tylox list up for demonstrative purposes, but she never circulated the list among the Tribal Council. Artz stated that Richard Monette was sitting within a few feet of her and may have been able to see the report. Artz did not have a cross reference list to compare the patient identification numbers with patient names, but Artz admitted someone with access to hospital computers could cross-reference the names and patient identification numbers. Artz testified she did not leave any documents with anyone who attended the meeting at the Skydancer Hotel. Artz only shared the Tylox list with her counsel and the Office of Inspector General. Artz testified employees were prescribed Tylox without a doctor's visit and this was, and continues to be, an institutional problem. Artz believes it is just a coincidence that the day after the meeting at the Skydancer, the Tribal Council passed a resolution to remove Buckles and Harris from their positions at IHS.

Marilyn Delorme is a medical technician and laboratory supervisor at IHS. Delorme has worked at IHS for thirty-four years. Prior to the meeting at the Skydancer Hotel, Delorme met with members of the Tribal Council to discuss a number of management issues and concerns at IHS. Delorme assumed she had been asked to meet with Tribal Council members because of the number of years she had worked at IHS and her ability to compare past and present management. Delorme remembers sharing some written concerns with Artz and these concerns were typed in a memorandum.

Delorme acknowledged attending a meeting at the Skydancer Hotel, but she was unable to recall the specific date. She remembered the meeting took place around 3:00 or 3:30 p.m. and lasted approximately forty-five minutes to an hour. Delorme did not recall bringing her handwritten notes to the Skydancer meeting and she did not give the memorandum she and Artz had prepared to any Tribal Council members or to Richard Monette. Delorme insisted it was impossible for anyone to have received the Tylox list from her because she never had possession of it. Delorme did not recognize the list of Tylox prescriptions, but remembered that Artz held up a stack of papers with the left-hand side torn off. Delorme testified that Artz did not pass out a list of Tylox prescriptions or the memorandum of the concerns she and Artz had prepared. Delorme was not present at any Tribal Council meetings when resolutions were passed concerning Buckles or Harris.

Raymond Grandbois is currently a Health Systems Administrator at the IHS area office in Aberdeen, South Dakota. At all times relevant to this lawsuit, Grandbois was the Service Unit Director or CEO at the Belcourt IHS. Grandbois testified he did not give the Georgia Artz memorandum to any members of the Tribal Council or to Richard Monette. Grandbois also testified he did not give any medical information to the Tribal Council about Buckles or Harris. Grandbois does not remember sharing any documents regarding Buckles and Harris with Richard Monette.

Richard Monette was the former Chairman of the Turtle Mountain Tribal Council and was the chairman at the time the April 6, 2001, and the December 19, 2001, resolutions were passed regarding Buckles and Harris. Monette has a juris doctorate degree from the University of Oregon, and is

currently a tenured law professor at the University of Wisconsin, Madison.

Monette remembers meeting with Georgia Artz and Marilyn Delorme and members of the Tribal Council at the Skydancer Hotel in April of 2001. Monette did not receive any medical information about Buckles and Harris from anyone. Monette testified he never received nor read the Artz memorandum. Monette said he asked Artz and Delorme to bring documents they had to substantiate their concerns about the operation of the hospital, but he did not recall receiving any documents. He remembers seeing the list of Tylox prescriptions, but does not remember getting a copy of it. Monette said he has never had access to a cross-reference of patient identification numbers and patient names. Monette had no knowledge of what transpired at the April 6, 2001, Tribal Council meeting because he was not present. The resolution was signed by Tribal Vice–Chairman Melvin Mike Lenoir. Monette has never seen the written allegations that are referenced in the resolution. He does not believe there were any written allegations because he never saw or heard anything about them. Monette said he would not have supported the resolution.

David Azure is the personnel manager of the IHS area office in Aberdeen, South Dakota. He has served in that capacity since January 1996. Azure recalls completing an evaluation at the Belcourt facility in the year 2000. He also remembered speaking with Georgia Artz about her concerns.

David Larson has been a pharmacist at the IHS facility in Belcourt since 1984. Larson testified that Georgia Artz approached him in February or March of 2001 and asked if he thought there was a drug problem at the hospital. Larson responded and said he thought physicians were over-prescribing certain drugs, and Larson ran a report detailing the number of Tylox prescriptions over the prior few months. Larson testified that he chose the drug Tylox. He removed the portion of the report that contained patient names, but left the column with the patient identification numbers so the frequency of the prescriptions could be determined. Larson gave the report to Artz. Larson testified he shredded the portion of the report that contained the patient names. He never provided the patient names to Artz, Delorme, or any Tribal Council member. Larson testified that the patient identification numbers had no meaning to him. Larson did not give any documents to Delorme, but he did give a similar list of Tylox prescriptions to the Office of Inspector General.

The parties also offered the depositions of Madonna Long, Daryl (K.C.) Russell, Carol Hunt, Marilyn Dionne, Dalbert Brien, Will Grant, Don Keplin, Jolene Peltier Poitra, Renee Alleck, Mike Lenoir, and Jeff Desjarlais at trial.

Madonna Long is the Program Officer for Health Information Management at the IHS office in Aberdeen, South Dakota. She has a bachelors of science degree in Health Information Management. She oversees Privacy Act and Freedom of Information Act issues. Long conducted a Privacy Act investigation at the Belcourt IHS after Buckles and Harris filed their complaint. Long subsequently issued a report which did not discuss the two remaining issues before the Court.

Daryl (K.C.) Russell is the Deputy Director for the Aberdeen Area IHS. In his deposition, Russell testified that Richard Monette told him that he (Monette) had a list of people who received narcotics without a doctor's visit. Russell never received a copy of the list.

Marilyn Dionne has been a registered nurse at the Belcourt IHS for twelve years. She remembered receiving a telephone call meant for Marilyn Delorme from Tribal Council member Melvin Mike Lenoir. Lenoir wanted to visit with her about the issues they had discussed. Dionne informed Lenoir he had the wrong person and re-directed the telephone call.

Carol Hunt has been the medical records director at IHS in Belcourt for six years. She has worked at the facility for over thirteen years. Hunt is also the Privacy Act and Freedom of Information Act coordinator. Hunt referred the Privacy Act investigation to Madonna Long at the direction of Raymond Grandbois.

Depositions of individuals who were members of the Turtle Mountain Tribal Council on April 6, 2001, were also offered by the parties. In his deposition, Tribal Council member Dalbert Brien stated he read the allegations against Buckles and Harris, but then said he never saw anything in writing. Tribal Council member William Grant stated he believes there were some papers regarding Buckles and Harris, but he does not have a specific recollection of what the papers were. Tribal Council member Don Keplin does not recall receiving anything in writing. Keplin testified Monette did not provide any written documentation and he has never seen any documents. Tribal Council Member Jeffrey Desjarlais did not remember any documentation. Tribal Council Vice Chairman Melvin Mike Lenoir does not remember any written allegations. Lenoir also testified he does not remember why the April 6, 2001, resolution was passed. Tribal Council Secretary Jolean Poitra Peltier and Assistant Secretary Renee Allick never saw any written allegations regarding Buckles and Harris.

## III. LEGAL DISCUSSION

### A. DEFAMATION AND RETALIATION CLAIMS

#### 1) DEFAMATION CLAIM

The Plaintiffs allege they are seeking relief under 28 U.S.C. § 1331, federal question jurisdiction, and 5 U.S.C. § 552, the Privacy Act. On June 24, 2003, the Court found that any alleged tort claims were deemed actions against the United States rather than actions against the individual defendants and ordered the individual defendants be dismissed from the action.

██ The United States, as a sovereign, is immune from suit unless it waives its immunity and consents to be sued. *United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). Under the Federal Tort Claims Act, the United States waives sovereign immunity for tort claims against the United States, with some exceptions. *Smith v. United States*, 507 U.S. 197, 204, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993). One of the exceptions listed in the Federal Tort Claims Act is "[a]ny claim arising out of ... libel, slander...." 28 U.S.C. § 2680(h); see *McAdams v. Reno*, 64 F.3d 1137 (8th Cir.1995)(ruling that plaintiffs' defamation claim must be dismissed because the Federal Tort Claims Act does not waive sovereign immunity for such claims). The law is well-established and 28 U.S.C. § 2680(h) clearly applies to the present case. There is no jurisdiction for claims of libel and slander (defamation) under the Federal Tort Claims Act. Accordingly, the Court finds it is without subject matter jurisdiction to address the Plaintiffs' defamation claim.

#### 2) RETALIATION CLAIM

██ The Plaintiffs also allege the Defendants "improperly retaliated against

the plaintiffs for asserting that a Privacy Act violation had occurred by failing to take prompt and appropriate remedial action in response to the Privacy Act violations, and subjecting the plaintiffs to a hostile and oppressive work environment...." Complaint, ¶ XVIII. As noted above, the Plaintiffs are seeking relief based on 28 U.S.C. § 1331, federal question jurisdiction, and 5 U.S.C. § 552a, the Privacy Act, neither of which provides a waiver of immunity for retaliation. In addition, there is no evidence the Plaintiffs have exhausted the administrative remedies available to federal employees alleging an actionable claim arising out of some form of adverse employment action such as their union grievance procedure, unfair labor practices procedures, the non-bargaining unit appeals procedure, the Merit Systems Protection Board appeal procedure, the Civil Service Reform Act remedies, the Federal Employee's Compensation Act remedies, Whistle Blower Protection Act remedies, Title VII remedies, and other employment discrimination claims procedures. Accordingly, the Court finds it is without subject matter jurisdiction to address the Plaintiffs' retaliation claim.

## B.  PRIVACY ACT CLAIMS

■ In order to state a claim for a violation of the Privacy Act, the Plaintiffs must show: (1) IHS disclosed protected information, (2) the information was retrieved from a system of records maintained by IHS and (3) IHS acted intentionally and willfully when releasing the information. 5 U.S.C. § 552a. To recover for a violation of the Privacy Act, a plaintiff must show the violation had an adverse impact on him or her and that the agency acted intentionally or willfully. 5 U.S.C. § 552a(g)(1)(D), (g)(4); see also *Wisdom v. Dept. of Hous. & Urban Dev.*, 713 F.2d 422, 424 (8th Cir.1983). A disclosure of a record may occur by oral communication—it need not be a written communication. *Olberding v. United States Dept. of Defense*, 564 F.Supp. 907, 913 (S.D.Iowa 1982). However, the information disclosed must have been initially or directly retrieved from a record contained in the systems of records. *Id.*

### 1) ALLEGED DISCLOSURE BY RAY GRANDBOIS

■ The Plaintiffs allege that Ray Grandbois disclosed the memorandum written by Georgia Artz (Exhibit P–1) to Tribal Chairman Richard Monette. Both Buckles and Harris acknowledged that neither of them had any personal knowledge that Grandbois gave the Georgia Artz memorandum to Monette, nor did they have any evidence to show Grandbois gave the document to Monette. At trial, Ray Grandbois expressly denied he gave the Artz memorandum to Richard Monette. More important, Richard Monette denied ever receiving or reading the Artz memorandum. The Court finds the testimony of Richard Monette to be credible and reliable. Accordingly, the Court finds the Plaintiffs have failed to satisfy the first prong which requires the Plaintiffs to prove, by a preponderance of the evidence, that IHS disclosed protected information.

As to whether the information was retrieved from a system of records maintained by IHS, Georgia Artz testified she was told by the three billers that Buckles and Harris were getting prescriptions without visiting a doctor. Although it was not fully developed at trial, the evidence infers that the billers obtained this information from incomplete Patient Care Components ("PCCs"). A PCC is a medical record within the system of records maintained by IHS. Artz's knowledge that Buckles and Harris were receiving prescriptions without visiting a doctor was information retrieved from a systems of

records maintained by IHS.[2] The Court finds the Plaintiffs have satisfied the second prong which requires the Plaintiffs to prove, by a preponderance of the evidence, that the information in the Artz memorandum was retrieved from a system of records maintained by IHS. Finally, because there was insufficient evidence to show any confidential information was released, the Court need not determine whether IHS acted intentionally and willfully. However, the evidence at trial revealed that the rumor mill was rampant throughout IHS and the Tribal Council relative to who was obtaining prescriptions without a doctor's visit. The Tribal Council reacted by the issuance of an ill-advised "resolution" on April 6, 2001. It is unclear what facts, if any, the Tribal Council relied upon in support of passing such an ill-advised resolution. It is also unclear what or who was the source of any such facts or whether the Tribal Council acted solely upon rumors, hearsay, and innuendo. Nevertheless, the Plaintiffs' failure to demonstrate that IHS disclosed confidential medical information must result in a dismissal of their Privacy Act claim as to the alleged disclosure by Ray Grandbois of the memorandum written by Georgia Artz to Tribal Chairman Richard Monette.

### 2) ALLEGED DISCLOSURE OF A PRESCRIPTION LIST BY MARILYN DELORME AND GEORGIA ARTZ TO THE TRIBAL COUNCIL

The Plaintiffs also allege that Marilyn Delorme and Georgia Artz disclosed a list of Tylox prescriptions (Exhibit P–13) to members of the Turtle Mountain Tribal Council at a meeting at the Skydancer Hotel on April 5, 2001. The Court finds

that the list of Tylox prescriptions was information retrieved from a system of records maintained by IHS. However, the Plaintiffs must also show that IHS disclosed protected information and that IHS acted intentionally and willfully when releasing the information.

■ Implicit in an allegation of a Privacy Act violation is the fact the disclosed information must have pertained to the complaining party. The undisputed evidence revealed, and Harris admitted, that neither her name nor her patient chart number was contained on the list of Tylox prescriptions Artz received from pharmacist Dave Larson. The Court finds Harris has failed to establish that there is any possible way her protected medical information could have been released through any disclosure of the list of Tylox prescriptions. As a result, the Court dismisses Harris' Privacy Act claim as to the alleged disclosure by Artz and Delorme of the list of Tylox prescriptions to members of the Turtle Mountain Tribal Council at a meeting at the Skydancer Hotel.

Buckles' second Privacy Act claim is hampered by the same failure of proof as to his first claim. Georgia Artz testified that at the meeting at the Skydancer Hotel on April 5, 2001, she held the list of Tylox prescriptions up for demonstrative purposes, but insisted she did not pass it out among the Tribal Council members. The list only contained patient chart numbers. All patient names had been deleted from the list. Artz stated she only shared the Tylox list with her counsel and with the Office of Inspector General. Likewise, Marilyn Delorme testified that it was im-

---

**2.** As the Court previously determined, the billers did not violate the Privacy Act by sharing this information with Artz because such a disclosure fell within the "need to know" exception to the Privacy Act. See Order

Granting in Part Defendant's Motion for Summary Judgment and Denying Plaintiffs' Motion for Partial Summary Judgment, February 18, 2004. (Docket No. 38).

possible for anyone to have received the Tylox list from her because she never had possession of it. David Larson testified he never provided a list of Tylox prescriptions to any member of the Tribal Council. The Court finds the testimony of Artz, Delorme, and Larson to be credible and reliable.

The Plaintiffs primarily rely on the testimony of one Tribal Council member, William Grant, to establish that the Tylox list was provided to the Tribal Council. While the Court views Grant's testimony as credible, it notes that Grant had no specific recollection of what information was provided to the Tribal Council. Such a vague recollection is not sufficient evidence to show the list of Tylox prescriptions was given to members of the Tribal Council. Grant's testimony also conflicts with the testimony of most of the other Tribal Council members who either did not remember receiving any documents or who testified that no documents were received. The Plaintiffs have the burden of proof. The Court finds the Plaintiffs have not satisfied their burden of proof as to the first prong and that there is insufficient evidence to show either Artz or Delorme disclosed the Buckles' protected information to members of the Tribal Council. As with the first claim, because there was insufficient evidence to show any confidential information was released, the Court need not determine whether IHS acted intentionally and willfully.

Even if the Court were to find that Georgia Artz and Marilyn Delorme intentionally and willfully disclosed the list of Tylox prescriptions, Buckles failed to offer any proof that the Tribal Council members would have been able to obtain the identity of persons whose prescription information they received. The list of Tylox prescriptions contained only patient chart numbers. The list did not contain patient names. Georgia Artz admitted that someone with access to the IHS computers may be able to cross-reference a patient chart number and a patient name, but Buckles offered no evidence to show that any member of the Tribal Council had access to such information. Nor did Buckles offer any evidence to show an IHS employee informed the Tribal Council of his (Buckles') patient chart number as revealed on the list of Tylox prescriptions.

Buckles' failure to prove that IHS disclosed protected information must result in a dismissal of his Privacy Act claim concerning the alleged disclosure by Georgia Artz and Marilyn Delorme of the list of Tylox prescriptions to members of the Turtle Mountain Tribal Council.

This case is very troubling for several reasons. The Court has a great deal of sympathy for both Shelly Harris and Dale Buckles and does not doubt that their working environment at IHS has become difficult and stressful at times. The Turtle Mountain Tribal Council's passage of "resolutions" directing the removal of federal employees from their positions at IHS without any facts, without any documented justification, and without any due process, is not the type of unilateral governmental action the people of the Tribe expect or deserve. An IHS employee is entitled to the basic fundamental concepts of fairness and due process (notice and an opportunity to be heard) before their jobs, their livelihood, and their reputations are put in jeopardy. To demand the removal of a longtime federal employee from his or her job based merely on rumors and/or internal politics is extremely troublesome. Former Tribal Council Chairman Richard Monette testified that he would never support such resolutions so the resolutions were passed by the Tribal Council when Monette was out-of-town on other business. This Court cannot control the actions of the Tribal

Council in passing such ill-advised resolutions. However, one would hope that common sense, fairness, and justice would override the need to pass such drastic measures and avoid ruining people's careers and reputations.

Similarly, the apparent failure of IHS to control the dispensing of Schedule II narcotics from its hospital facility has created, and will continue to create, ongoing controversy and strife within the hospital and the community. It was clear and undisputed at trial that the inappropriate dispensing of prescription medication continues to be an institutional problem at IHS. Little, if anything, has changed since this nightmare first surfaced in 2001 as a result of these proceedings. The Court would sincerely hope that officials from the regional and national offices of IHS will investigate, address, and correct this institutional problem. To do nothing in response to the problems that have surfaced as a result of this litigation would be a tragedy. Nevertheless, what took place, as unseemly as it may have been, was not shown to be a violation of the federal Privacy Act based upon the evidence presented.

## IV. CONCLUSION

The Court DISMISSES WITH PREJUDICE all the Plaintiffs' claims. The Clerk of Court is ORDERED to enter judgment accordingly.

IT IS SO ORDERED.