United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 25, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 04-40466

)))))))))))))))))))))))))))

GARY JACOBS,

Plaintiff-Appellant,

v.

NATIONAL DRUG INTELLIGENCE CENTER, ET AL.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before REAVLEY, JOLLY, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This case involves the disclosure provision of the Privacy Act of 1974.  The district court granted summary judgment for the National Drug Intelligence Center, holding that the information in the disclosed document is not a "record" within the meaning of the Act.  We disagree and now reverse.

I.

Plaintiff-Appellant Gary Jacobs is the President and CEO of Laredo National Bank, which conducts business in the United States and Mexico.  Jacobs has been the President-CEO of the bank for 25 years.  He claims that the National Drug Intelligence

1

Center ("NDIC") violated the Privacy Act by leaking part of an internal analytical document, the "White Tiger Report" ("the Report"), to the press. The Report alleged that Jacobs was involved in a Mexican money-laundering and drug-trafficking organization.

The NDIC is part of the Department of Justice. Its function is to coordinate and consolidate drug intelligence from national-security and law-enforcement agencies. Specifically, the NDIC analyzes the structure, membership, finances, and activities of drug-trafficking organizations.

In 1997, the FBI and the DEA asked the NDIC to conduct a strategic assessment of a Mexican criminal organization that was allegedly involved in money laundering and drug trafficking in the United States, Mexico, and several other countries. As a result, the "White Tiger Project" was born: NDIC analysts collected and reviewed pertinent information from thousands of agency records, including records from the DEA, FBI, U.S. Customs Service, and the U.S. Attorney's Office. The analysts placed these records in the NDIC's "RetrievalWare" database. RetrievalWare is the NDIC's electronic-document system.

RetrievalWare is located within the NDIC's computer system—"Justice/NDIC-001." The "Main Network System" of Justice/NDIC-001 contains RetrievalWare and two other component parts, the "unit group" and the "unit home" directories, both of

2

which store Microsoft Word documents.

The White Tiger Report contained several different sections. The section at issue in this case is the "Executive Summary," which summarized the entire Report. Neither the Report nor the Executive Summary were stored in RetrievalWare, but rather in one of the other component parts of the Main Network System (unit group or unit home).

In March 1999, NDIC supervisor Daniel Huffman mailed a draft version of the Executive Summary to Donald E. Schultz, a professor at the U.S. Army War College. However, neither NDIC management nor the agencies participating in the White Tiger Project had reviewed this version of the Executive Summary yet. The Office of the Inspector General of the Justice Department conducted an investigation into the leak and concluded that Huffman's disclosure of the document to Schultz was unauthorized and recommended "significant discipline." Then-Attorney General Janet Reno also acknowledged that "the release of the draft NDIC report . . . was not authorized by either the NDIC or the Department of Justice."

In May 1999, Donald Schultz sent the Executive Summary to Dolia Estevez, a reporter for the Mexican newspaper, *El Financiero*. Later that month, *El Financiero* published a front-page article entitled, "The Hanks, in the Gun Sight of U.S. Drug Enforcement; They Constitute a Threat, It is Warned" (translated

3

from Spanish). The article purported to rely heavily on an "unpublished official document" from the NDIC and contained allegations of wrongdoing against Jacobs. Specifically, the article discussed the activities of a family referred to as the Hank Group and reported that the family laundered money through Jacobs's bank, stating,

> The analysis states that Hank Rhon uses "front men" or "men of straw" to acquire interests in the United States. One of these characters, it says, is Gary Jacobs, the president of the Laredo National Bank, who, according to the NDIC, lacks personal resources sufficient to acquire the shares he owns in the Bank.

In May 2001, Jacobs filed suit against the NDIC in the Southern District of Texas, claiming that by leaking the Executive Summary, the NDIC violated the Privacy Act by disclosing "records" maintained in a "system of records." Specifically, Jacobs alleged that the Executive Summary was derived from items of information (records) that the NDIC analysts retrieved from RetrievalWare (the system of records).

The NDIC has not provided Jacobs with either the information about him in RetrievalWare or a copy of the Executive Summary. However, Jacobs believes that a confidential Customs Service report from November 1997 was included in the RetrievalWare records that formed the basis of the Executive Summary's information on Jacobs. Jacobs believes this for three reasons: first, such reports were generally scanned into RetrievalWare; second, *El Financiero* stated that the Executive Summary relied on

4

19 Customs Service cases; and third, the language of the *El Financiero* article, which purports to quote the Executive Summary, is similar to the language of the Customs report.[1] Jacobs provided the following comparison in his brief:

| November 1997 Customs Report | *El Financiero* Article |
|---|---|
| "An in depth analysis of the finances of Jacobs indicates that he is just a front man for Carlos Hank-Rhon and the Hank family in many enterprises of the United States. A source has indicated that Jacobs would never have been able to obtain those enormous earnings by himself. This is an example of how the Hank family is obtaining a solid foothold on the economy of the United States." | "The analysis states that Hank Rhon uses 'front men' or 'men of straw' to acquire interests in the United States. One of these characters, it says, is Gary Jacobs, the president of the Laredo National Bank, who, according to the NDIC, lacks personal resources sufficient to acquire the shares he owns in the Bank." |

Jacobs claims that as a result of the accusations against him published in *El Financiero*, his reputation has been significantly damaged and he has lost substantial business opportunities in both the United States and Mexico.

In September 2002, the NDIC moved to dismiss Jacobs's complaint or, alternatively, for summary judgment. Jacobs also cross-moved for partial summary judgment against the NDIC on the issue of liability.

The district court heard oral argument on the motions in December 2002, granting the NDIC's and denying Jacobs's. The

---

[1] The November 1997 Customs Service report was reprinted in JOSE MARTINEZ, THE TEACHINGS OF THE PROFESSOR: INQUEST ON CARLOS HANK-GONZALES 234–66 (1999).

district court did not issue written reasons for its decision, but did make the following statement at the summary judgment hearing:

> I'm going to grant the Motion to Dismiss and/or for Summary Judgment of the NDIC here and that I don't think that the records here are maintaining a system of records under the Privacy Act, section 552-A(a), where it defines "record" and "system of records" and I don't – both on the Motion to Dismiss and/or the Summary Judgment Motion I think it's clear that they don't, and that this is not a *Privacy Act* matter.

Jacobs filed a motion to reconsider, which the district court denied. Judgment was entered in April 2004. This appeal followed.[2] The only issue before the court is whether the information about Jacobs in the Executive Summary constitutes a "record" contained in a "system of records" within the meaning of the Privacy Act.

## II.

This court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Bettersworth v. FDIC*, 248 F.3d 386, 391 (5th Cir. 2001).

The Privacy Act of 1974, 5 U.S.C. § 552a (1996), "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that

---

[2] Jacobs appeals only the district court's grant of the NDIC's motion for summary judgment; he does not appeal the denial of his partial motion for summary judgment.

6

his records are accurate and properly used." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (ellipsis in original) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984)).  The Act provides four causes of action: (1) for an agency's failure to amend an individual's record pursuant to his request;[3] (2) for an agency's denial of access to an individual's records;[4] (3) for an agency's failure to maintain an individual's records with "accuracy, relevance, timeliness, and completeness";[5] and (4) for an agency's failure to comply with other Privacy Act provisions, which has an "adverse effect" on the individual.[6]  *See Gowan v. U.S. Dep't of the Air Force*, 148 F.3d 1182, 1187 (10th Cir. 1998) (listing the four causes of action).  The remedy available to a successful plaintiff depends on which cause of action he pursues.  For the first two causes of action, a successful plaintiff is entitled to injunctive relief, and, if the plaintiff has "substantially prevailed," the court may also award attorney's fees and costs.  *Id.* at 1187 (citing 5 U.S.C. § 552a(g)(2), (g)(3)).  For the latter two, a successful plaintiff may recover damages, attorney's fees, and costs, but only if he proves that the governmental agency acted willfully.  *Id.* at

---

[3] 5 U.S.C. § 552a(g)(1)(A).

[4] *Id.* § 552a(d)(1), (g)(1)(B).

[5] *Id.* § 552a(g)(1)(C).

[6] *Id.* § 552a(g)(1)(D).

1187-88 (citing 5 U.S.C. § 552a(g)(4)).

Here, Jacobs asserts the fourth cause of action: he claims that the NDIC willfully disclosed a "record" contained in a "system of records" in violation of § 552a(b) and that the disclosure had an adverse effect on him. Section 552a(b) provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person," unless the disclosure falls within one of twelve statutory exceptions. § 552a(b). The NDIC has not alleged that any exception applies to this case.

Thus, for Jacobs to survive summary judgment on his disclosure claim, he must present evidence of the following elements: (1) the information is a "record" in a "system of records"; (2) the agency disclosed the information; (3) the disclosure had an adverse effect on him; and (4) the disclosure was willful. *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992). Only the first element is at issue here—whether the information disclosed about Jacobs is protected by the Act as a "record" within a "system of records."

### III.

Jacobs argues that the record that was disclosed in this case is the information about him that was retrieved by his name from RetrievalWare and put into the Executive Summary. The NDIC, by contrast, argues that the disclosed record is the Executive

8

Summary, itself.  According to the NDIC, the Privacy Act does not apply because the Executive Summary was not contained within RetrievalWare's system of records; that is, the document, itself, was not retrieved from RetrievalWare by Jacobs's name.  The NDIC cites little authority to support its interpretation of the statute and instead tries to distinguish those cases relied upon by Jacobs.  It cannot.  Jacobs's interpretation of the statute is supported by both the statute's text and the cases interpreting it.  We therefore reverse the judgment of the district court.

A.

The Privacy Act prohibits the disclosure of "any record which is contained in a system of records by any means of communication."  § 552a(b).  The Act defines "record" in the following way:

> [T]he term "record" means any item, collection, or grouping of *information* about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or photograph.

§ 552a(a)(4) (emphasis added).  The statute further defines "system of records" as "a group of records under the control of any agency from which *information is retrieved by the name of the individual* or by some identifying number, symbol, or other identifying particular assigned to the individual."  § 552a(a)(5) (emphasis added).

9

This case fits plainly within the statute. First, the Executive Summary accused Jacobs of being a front man for the Hank Group money-laundering and drug-trafficking organization and opined that Jacobs did not have the financial capability to purchase the bank shares that he owned. The Executive Summary thus included "information about" Jacobs. *See* § 552a(a)(4).

Second, the NDIC has conceded that NDIC analysts on the White Tiger Project retrieved information from RetrievalWare using Jacobs's name as a search term. Moreover, deposition testimony by White Tiger analysts indicates that information from RetrievalWare was cut and pasted into the Report: one analyst testified that he moved information from RetrievalWare to his home directory or shared drive so that he could incorporate it into the Report; another analyst testified that he opened two parallel windows on his computer——one with the search results from RetrievalWare and the other with his draft section of the Report——and he incorporated notes and exact quotes from RetrievalWare records into his draft section of the Report; a third analyst testified that as a general matter, information from RetrievalWare could be cut and pasted into a Microsoft Word document. In addition, a White Tiger analyst also testified that analysts working on the Report did not conduct any independent investigations into the activities of the Hank Group. Taken together, this information raises a genuine issue of material

10

fact as to whether the disclosed information was retrieved from RetrievalWare using Jacobs's name as a search term.

Finally, RetrievalWare qualifies as a system of records under the statute. RetrievalWare is located within Justice/NDIC-001. In 1993, several years before the beginning of the White Tiger Project, the NDIC published a notice in the Federal Register identifying Justice/NDIC-001 as its Privacy Act system of records.

Under a straightforward application of the statute, then, Jacobs has raised a genuine issue of material fact as to the statute's applicability, which defeats the NDIC's motion for summary judgment.

The NDIC argues, however, that the statute only protects against the disclosure of a physical document that is contained in a system of records. Thus, it contends, the Privacy Act does not apply to the disclosure of the Executive Summary in this case because it was not stored in RetrievalWare. We reject this argument.

A myriad of cases has held or assumed that the Act protects against oral disclosures,[7] as well as the nonconsensual

---

[7] *See Orekoya v. Mooney*, 330 F.3d 1 (1st Cir. 2003); *Doe v. U.S. Postal Serv.*, 317 F.3d 339 (D.C. Cir. 2003); *Krieger v. Fadely*, 211 F.3d 134 (D.C. Cir. 2000); *Pippinger v. Rubin*, 129 F.3d 519 (10th Cir. 1997); *Henson v. NASA*, 14 F.3d 1143 (6th Cir. 1994); *Kimberlin v. U.S. Dep't of Justice*, 788 F.2d 434 (7th Cir. 1986); *Bartel v. FAA*, 725 F.2d 1403 (D.C. Cir. 1984); *Doyle v. Behan*, 670 F.2d 535 (5th Cir. 1982); *Stokes v. Comm'r of Soc.*

11

dissemination of letters and memoranda containing information from a system of records.[8]  For example, in *Pippinger v. Rubin*, the Tenth Circuit used the Privacy Act's legislative history to support a broad interpretation of the disclosure provision.  129 F.3d 519, 529 (10th Cir. 1997).  There, information about Pippinger from his employer's record system was orally disclosed by his former coworkers in deposition testimony.  *Id.* at 523–24.  In interpreting the term "disclose" (which is not defined in the Privacy Act), the *Pippinger* court stated,

> The court's broad interpretation of the Privacy Act's prohibition against disclosure is clearly consistent with Congressional intent.  As the Joint House and Senate Report explained, a primary purpose of 5 U.S.C. § 552a(b) is to[] "require employees to refrain from disclosing records *or personal data in them*, within the agency . . . .  This section is designed to prevent the office gossip, *interoffice and interbureau leaks of information*

---

*Sec. Admin.*, 292 F. Supp. 2d 178 (D. Me. 2003); *Sullivan v. U.S. Postal Serv.*, 944 F. Supp. 191 (W.D. N.Y. 1996); *Romero-Vargas v. Shalala*, 907 F. Supp. 1128 (N.D. Ohio 1995); *Brooks v. Veterans Affairs*, 773 F. Supp. 1483 (D. Kan. 1991); *Savarese v. U.S. Dep't of Health, Educ., & Welfare*, 479 F. Supp. 304 (N.D. Ga. 1979) (all involving the oral disclosure of information).

[8]*Williams v. Dep't of Veterans Affairs*, 104 F.3d 670 (4th Cir. 1997) (letter); *Pilon v. U.S. Dep't of Justice*, 73 F.3d 1111 (D.C. Cir. 1996) (memo); *Wilborn v. Dep't of Health & Human Servs.*, 49 F.3d 597 (9th Cir. 1995) (judicial opinion); *Tijerina v. Walters*, 821 F.2d 989 (D.C. Cir. 1987) (letter); *Bartel v. FAA*, 725 F.2d 1403 (D.C. Cir. 1984) (letter); *Boyd v. Sec'y of the Navy*, 709 F.2d 684 (11th Cir. 1983) (memo); *Chang v. Dep't of the Navy*, 314 F. Supp. 2d 35 (D.D.C. 2004) (press release and "Information Paper"); *Swenson v. U.S. Postal Serv.*, Civ. No. S-87-1282 MLS, 1994 U.S. Dist. LEXIS 16524 (E.D. Cal. Mar. 10, 1994) (letter); *Savarese v. U.S. Dep't of Health, Educ., & Welfare*, 479 F. Supp. 304 (N.D. Ga. 1979) (letter).

> *about persons of interest in the agency or in the*
> *community*, or such actions as the *publicizing of*
> *information* of a sensational or salacious nature or of
> that detrimental to character reputation."

*Id.* at 529 (first emphasis in original) (quoting S. REP. NO. 93-

1183; H.R. REP. NO. 93-1416, at 51 (1974), *reprinted in* 1974

U.S.C.C.A.N. 6916, 6966).

We agree with the Tenth Circuit's characterization of the

statute; the Privacy Act's legislative history supports a broader

interpretation of the Privacy Act than the one advanced by the

NDIC in this case. The disclosure provision is meant to protect

against just the sort of governmental activity that took place

here—the leaking and publicizing of information that is

"detrimental to character reputation." *See id.* Both the

statute's plain text and its legislative history support the

application of the Privacy Act to this case. The caselaw

applying the Act's disclosure provision confirms our conclusion.

Jacobs principally relies on *Bartel v. FAA*, 725 F.2d 1403

(D.C. Cir. 1984), the seminal case interpreting the Privacy Act's

disclosure provision. That case involved both an oral disclosure

and the disclosure of letters, analogous to the Executive Summary

disclosed in this case. *Id.* at 1406.

In *Bartel*, the plaintiff, Bartel, worked as an air-safety

inspector for the FAA. *Id.* at 1405. Contemplating the filing of

an EEOC complaint alleging reverse discrimination, Bartel

13

requested employment information about several other inspectors. *Id.* The information he received "consisted of virtually complete airman files" of three of his coworkers. *Id.* Despite being assured that the requested information was available to the public, some of the information in the files was not public. *Id.* Bartel's acquisition of the files was therefore a potential Privacy Act violation. *Id.*

Bartel then filed a discrimination complaint with the FAA's EEO office. *Id.* Shortly thereafter, one of Bartel's superiors, Vincent, instituted an investigation into Bartel's request for the employment files. *Id.* Documents collected pursuant to the investigation were placed in a file called a "Report of Investigation," or "ROI." The investigation closed without any criminal charges being filed against Bartel. *Id.* at 1405–06. Bartel soon left the FAA for civilian employment. *Id.* at 1406.

The next year, Vincent learned that Bartel was seeking reemployment with the FAA. *Id.* Vincent then sent the three airmen whose files had been requested letters notifying them of the apparent Privacy Act violation by Bartel. *Id.* These letters contained Bartel's name and place of work and stated that Bartel had obtained records about them, potentially in violation of the Privacy Act. *Id.* Vincent also disclosed Bartel's alleged Privacy Act violation over the phone to an investigator for Flight Resources, Inc., with whom Bartel was interviewing for a

14

job.  *Id.*  Bartel was denied several jobs because of Vincent's letters and phone calls.  *See id.*

Bartel sued the FAA, alleging that Vincent's letters and phone conversations themselves constituted nonconsensual disclosures in violation of § 552a(b) of the Privacy Act.  *Id.* The district court dismissed Bartel's complaint.  *Id.* at 1407. The D.C. Circuit reversed.  *Id.*

In the course of its analysis, the *Bartel* court assumed a broad definition of "record," stating,

> It is of course obvious that the letters were not themselves agency records.  On the other hand, it is not disputed that the Bartel ROI referred to in the letters is a record subject to the disclosure provisions of the Act.   Because we find that under the peculiar circumstances of this case, the letters did in fact communicate sensitive information contained in the ROI——specifically, that Bartel's conduct was the subject of an official agency investigation, that he acted improperly, and that he may have violated the Privacy Act——we conclude that the Act's disclosure provisions may have been triggered.   Courts have up to now unanimously agreed that the Act covers more than the mere physical dissemination of records (or copies) but that it does not necessarily cover disclosure of information merely because the information happens to be contained in the records.  *The line they draw is that where no statutory exception applies, the Act prohibits nonconsensual disclosure of any information that has been retrieved from a protected record*.

*Id.* at 1408 (emphasis added).

*Bartel* squarely supports Jacobs's position.  First, the letters disclosed there are analogous to the Executive Summary disclosed here.  In both cases, the damaging information was

15

taken from a protected record and inserted into a new document, which was then disclosed without the plaintiff's consent. Under the statute, the new document is also a protected record. *See* 5 U.S.C. § 552a(a)(4).

Second, the narrow definition of record that the NDIC advances here is inconsistent with the broad definition set forth in *Bartel*. The NDIC claims that the Privacy Act was not triggered here since the Executive Summary, itself, was not stored in RetrievalWare. This reading of the Act, however, cannot be reconciled with the caselaw.

Furthermore, the NDIC attempts to distinguish *Bartel* on the ground that the letters there were "information paper[s]" created "for the purpose of disclosing information contained in a system of records." According to the NDIC, the Executive Summary should be treated differently because it is "an analysis of vast amounts of underlying data created at the request of other agencies." The NDIC does not cite any authority to support this proposition, nor is the distinction persuasive. There is absolutely nothing in *Bartel* suggesting that the court's decision hinged on the nature of the document disclosed. In fact, courts following *Bartel* have done so in contexts where the disclosed document was not created for the purpose of disclosing information contained in a system of records.

In *Wilborn v. Department of Health and Human Services*, for

16

example, the information illegally disclosed was contained in a judicial opinion. 49 F.3d 597 (9th Cir. 1995), *rev'd on other grounds by Doe v. Chao*, 306 F.3d 170 (2004). In that case, Wilborn had previously been employed as a staff attorney for the Department of Health and Human Services ("HHS"), where his job was to write decisions in social-security cases for two administrative law judges ("ALJs"). *Id.* at 599. During his tenure at HHS, one of the ALJs informed Wilborn that "the agency was dissatisfied with the number of decisions he was writing and told him he would be placed on a Performance Improvement Plan ('PIP')." *Id.* Thereafter, the ALJ recorded Wilborn's job performance in the PIP, which was placed in Wilborn's file. *Id.*

Wilborn filed a grievance over the PIP, and it was eventually ordered to be expunged from the agency's records. *Id.* Wilborn then left HHS and went into private practice representing social-security-disability claimants. *Id.* One of his cases was handled by the same ALJ who had administered the PIP. *Id.* Wilborn wrote a letter to the ALJ attacking his impartiality. The ALJ responded to Wilborn's allegations in the text of an opinion, noting, "What Mr. Wilborn does not state is that as his supervisor, the undersigned was required to place him on a Performance Improvement Plan (PIP) because of his failure to meet even minimal production requirements." *Id.*

Wilborn complained that the ALJ had violated the Privacy

17

Act, after which the ALJ issued a substituted opinion without the objectionable language, but which did not disclose that the PIP had been rescinded and expunged from the agency's records.  *Id.*

Wilborn filed suit, alleging that the ALJ's opinion impermissibly disclosed information about him in violation of the Privacy Act.  *See id.*  Although the district court granted summary judgment for the agency, the Ninth Circuit reversed, relying on *Bartel.  Id.* at 600–01.

*Wilborn* is important for two reasons.  First, as in *Bartel*, the information disclosed in *Wilborn* was equally removed from the relevant system of records as was the Executive Summary here: There, the ALJ incorporated information that had once been in Wilborn's employment file into a judicial opinion, which was disclosed without Wilborn's consent.  *See id.*  Here, information was taken from RetrievalWare and incorporated into the Executive Summary, which was then disclosed.

Second, *Wilborn* refutes the NDIC's argument that *Bartel* can be distinguished because the disclosed document in that case was made for the purpose of "disseminat[ing] information from a system of records."  Although the letter in *Bartel* was written for the purpose of informing the objects of Bartel's information request that Bartel had obtained their files in apparent violation of the Privacy Act, *Bartel*, 725 F.2d at 1406, the document disclosed in *Wilborn*, a judicial opinion, was written

18

for the purpose of adjudicating a social-security-disability claimant's request for benefits, *Wilborn*, 49 F.3d at 599. Thus, in *Wilborn*, the damaging information was collateral to the purpose of the document's existence, as was the information about Jacobs in the Executive Summary, the purpose of which was to summarize the available intelligence on the Hank Group's drug-trafficking and money-laundering activities for law-enforcement agencies. The NDIC's attempt to distinguish *Bartel* therefore fails.

In addition to *Bartel* and *Wilborn*, the First, Third, Fourth, Sixth, Seventh, and Tenth Circuits have all interpreted the Privacy Act's record requirement consistent with the reading that Jacobs advances here.[9] District-court cases construing the

_____

[9] *See Orekoya v. Mooney*, 330 F.3d 1, 6 (1st Cir. 2003) (oral disclosure) ("*The Privacy Act prohibits* more than dissemination of records themselves, but also 'nonconsensual *disclosure of any information that has been retrieved from a protected record.*'" (emphasis added)); *Quinn v. Stone*, 978 F.2d 126, 133 (3d Cir. 1992) (oral disclosure) (stating that "a record can . . . consist of a single piece of information"); *Williams v. Dep't of Veterans Affairs*, 104 F.3d 670, 673 (4th Cir. 1997) (letters) ("In general, courts have been lenient in determining what information constitutes a 'record' within the meaning of the Act."); *id.* at 674 (rejecting the agency's argument that the letter's status as a "draft" removed it from the Act's purview and stating that "were that the case, agency bureaucrats could too easily circumvent the purposes of the Act by stamping all records 'Draft'"); *Henson v. NASA*, 14 F.3d 1143, 1149 (6th Cir. 1994) (oral disclosure) (reversing summary judgment for the agency because an affidavit by an agency employee "establish[ed] that information contained in a system of records was divulged"); *Kimberlin v. U.S. Dep't of Justice*, 788 F.2d 434, 436 (7th Cir. 1986) (letter) (stating that unless the routine-use exception applied, the nonconsensual disclosure of a letter containing

Privacy Act also uniformly support Jacobs's position.[10]  No case

supports the NDIC's position.

B.

Finally, the NDIC asks us to reject Jacobs's argument for

policy reasons.  It argues that were this court to rule in

Jacobs's favor, an intolerably heavy burden would be imposed on

the government.  Specifically, the NDIC claims that under

Jacobs's approach, "it is impossible for an agency to predict

with certainty whether a document is subject to the statute";

and, it argues, the government will have to "analyze each

document's component parts and determine whether any of those

---

information derived from the agency's system of records was
prohibited by the Privacy Act); *Pippinger v. Rubin*, 129 F.3d 519
(10th Cir. 1997) (oral disclosure) (discussed above).

[10] *See Buckles v. Indian Health Serv./Belcourt Serv. Unit*,
310 F. Supp. 2d 1016, 1068 (D.N.D. 2004) ("A disclosure of a
record may occur by oral communication——it need not be a written
communication."); *Sullivan v. U.S. Postal Serv.*, 944 F. Supp.
191, 196 (W.D.N.Y. 1996) (recognizing that the disclosure of
information from a record is enough to trigger the protection of
the Privacy Act); *Romero-Vargas v. Shalala*, 907 F. Supp. 1128,
1132 (N.D. Ohio 1995) ("The Act requires a federal agency to
obtain the written consent of an individual before it discloses
information about an individual to a third party."); *Brooks v.
Veterans Admin.*, 773 F. Supp. 1483, 1486 (D. Kan. 1991) ("We
believe that whether an unidentified doctor supported or failed
to support an employee's disability retirement application is an
item of 'information about an individual' which is covered by the
Privacy Act."); *Savarese v. U.S. Dep't of Health Educ. & Welfare*,
479 F. Supp. 304, 308 (N.D. Ga. 1979) ("Congress had as its
purpose the control of the unbridled use of highly sophisticated
and centralized information collecting technology.  The capacity
of computers and related systems to collect and distribute great
masses of personal information clearly poses a threat that the
Privacy Act seeks to remedy.").

20

parts were derived from a system of records anywhere throughout the federal government." According to the NDIC, each time a document is found to include "such derivative information," it will be required to evaluate whether disclosure of the information is permitted under any statutory exception to the disclosure provision. This argument is flawed in several respects.

First, the Act only prohibits the disclosure of records "in a system of records." 5 U.S.C. § 552a(b). And the Act defines "system of records" narrowly——the records must be both "under the control of [an] agency," and the information must be "retrieved by the name of the individual or by some identifying . . . particular." § 552a(a)(5). Courts have strictly enforced this latter requirement.[11]

Second, the prohibition against disclosure is not a strict-

---

[11] *Bechhoefer v. U.S. Dep't of Justice*, 312 F.3d 563 (2d Cir. 2002) (holding that a letter left in a desk drawer was not in a system of records); *Bettersworth v. FDIC*, 248 F.3d 386 (5th 2001) (file on bank, not plaintiff, was not in a system of records); *Gowan v. U.S. Dep't of Air Force*, 148 F.3d 1182 (10th Cir. 1998) (record kept in file marked "ethics" not in a system of records); *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453 (D.C. Cir. 1996) (retrieval capability not enough, must be actual retrieval); *Manuel v. Veterans Affairs Hosp.*, 857 F.2d 1112 (6th Cir. 1998) (no system of records where agency purposefully prevented information from getting into the system); *Boyd v. Sec'y of the Navy*, 709 F.3d 684 (11th Cir. 1983) (record kept in random file and could be found only by searching through file not in system of records); *Thomas v. U.S. Dep't of Energy*, 719 F.2d 342 (10th Cir. 1983) (disclosed information was within the personal knowledge of government employee).

21

liability provision.  In order for a plaintiff to recover, he must show that the disclosure was willful and had an adverse effect on him.  § 552a(g)(1)(D), (g)(4).  Many plaintiffs are denied recovery for lack of evidence of these elements.[12]

Third, at least some courts have limited the type of information protected by the Act.[13]  Finally, the Act, itself, safeguards against unreasonable liability by providing for twelve statutory exceptions.  *See* § 552a(b)(1)-(12).

Jacobs is not asking the court for a more expansive reading of the Privacy Act than other courts have given it.  To the contrary, Jacobs's case is the kind at which the Privacy Act's disclosure provision is aimed.

IV.

For the foregoing reasons, we hold that the district court erred in granting the NDIC's motion for summary judgment.  The judgment of the district court is therefore reversed.

---

[12] *See Pippinger v. Rubin*, 129 F.3d 519, 530 (10th Cir. 1997) (no evidence of willfulness); *id.* at 532 (no evidence of adverse effect); *Stephens v. Tenn. Valley Auth.*, 754 F. Supp. 579, 583 (E.D. Tenn. 1990) (no intent).

[13] *See Bechhoefer v. U.S. Dep't of Justice*, 209 F.3d 57, 62 (2d Cir. 2000) (holding that a "record" is personal information about an individual linked through an identifying particular); *Tobey v. NLRB*, 40 F.3d 469, 470 (D.C. Cir. 1994) (information is a "record" when it is "about" an individual); *Quinn v. Stone*, 978 F.2d 126, 133 (3d Cir. 1992) (information about an individual linked with an identifying particular).  *But see Boyd v. Sec'y of the Navy*, 709 F.2d 684, 686 (11th Cir. 1983) (information must reflect some quality or characteristic about the individual involved).

REVERSED and REMANDED.